**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JEFFERY J. BARNES,
*Plaintiff-Appellant*,

v.

NANCY A. BERRYHILL, Acting
Commissioner Social Security,
*Defendant-Appellee.*

No. 16-35815

D.C. No.
3:15-cv-01424-
SI

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted May 11, 2018
Portland, Oregon

Filed July 13, 2018

Before:  Johnnie B. Rawlinson and Morgan Christen,
Circuit Judges, and Frederic Block, District Judge.[*]

Opinion by Judge Block

---

[*] The Honorable Frederic Block, Senior United States District Judge for the Eastern District of New York, sitting by designation.

# SUMMARY[**]

## Social Security

The panel reversed the district court's judgment affirming the Commissioner of Social Security's denial of an application for disability insurance benefits and supplemental security income under the Social Security Act, and remanded for further proceedings.

The panel held that the administrative law judge's ("ALJ") failure to make written findings regarding transferability of skills, required by Social Security Ruling 82-41, prevented the panel from determining whether substantial evidence supported the ALJ's determination at Step Five of the sequential evaluation process that claimant was able to perform other work and therefore was not disabled under the Act. The panel held that neither the ALJ nor the vocational expert stated what skills, if any, claimant had acquired from his past work and whether those skills were transferable to the semi-skilled jobs identified by the vocational expert. The panel concluded that SSR 82-41 obligated the ALJ to make transferability of skills findings.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Lindsey Craven (argued) and Merrill Schneider, Schneider Kerr & Robichaux, Portland, Oregon, for Plaintiff-Appellant.

Thomas M. Elsberry (argued), Special Assistant United States Attorney; Erin F. Highland, Assistant Regional Counsel; Matthew W. Pile, Acting Regional Chief Counsel, Seattle Region X; Office of the General Counsel, Social Security Administration, Seattle, Washington; Janice E. Hebert, Assistant United States Attorney; Billy J. Williams, United States Attorney; United States Attorney's Office, Seattle, Washington; for Defendant-Appellee.

---

**OPINION**

BLOCK, District Judge:

Jeffrey Barnes appeals the district court's judgment affirming the Commissioner of Social Security's ("Commissioner") decision denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Barnes argues that the Administrative Law Judge ("ALJ") erred at Step Five of his disability determination by failing to make specific written findings regarding transferability of skills as required by Social Security Ruling ("SSR") 82-41. We last addressed the scope of SSR 82-41 in *Bray v. Commissioner of Social Security Administration*, 554 F.3d 1219, 1223–26 (9th Cir. 2009).

We now revisit the subject to consider a question that did not arise in *Bray*: whether SSR 82-41 obligates the ALJ to

make transferability of skills findings where, unlike *Bray*, no Grid rule states that a person with the claimant's age, education, and work experience is disabled absent transferable skills.[1]  We hold that it does and reverse and remand for further proceedings.

## Background

In March 2012, Barnes filed an application for DIB and SSI, alleging disability from multiple impairments, including chronic pain and swelling in his left leg and respiratory disease that required the use of supplemental oxygen.  He has a high school education and worked previously as a machinist, a skilled position, and an off-bearer, an unskilled position.[2]  The Social Security Administration ("the Administration") denied Barnes's application, and, on December 31, 2013, he had a hearing before an ALJ.  At the time of the hearing, Barnes was 47 years old.

The ALJ issued a written decision on January 15, 2014.  Applying the familiar five-step process,[3] the ALJ

---

[1] The Medical-Vocational Guidelines, commonly known as the "Grids," are listed at 20 C.F.R. Part 404, Subpart P, Appendix 2.

[2] The parties do not dispute the nature of Barnes's work experience.

[3] The five-step inquiry entails the following questions: "(1) whether the claimant presently works in substantial gainful activity; (2) whether the claimant's impairment, or a combination of impairments, qualifies as severe; (3) whether the impairment, or combination of impairments, equals an impairment listed in the regulations; (4) whether the claimant's residual functional capacity allows her to perform her past relevant work; and (5) whether significant numbers of jobs exist in the national economy that the claimant can perform." *Popa v. Berryhill*, 872 F.3d 901, 905–06 (9th Cir. 2017) (citing 20 C.F.R. § 416.920).  The claimant

determined that (1) Barnes had not engaged in substantial gainful activity since the alleged onset date; (2) his morbid obesity, respiratory diseases, disorders affecting his leg, alcohol abuse, hypertension, and mental disorders were severe impairments; but (3) those impairments did not meet or medically equal the criteria of a listing.

Before reaching Step Four, the ALJ found Barnes had the residual functional capacity ("RFC") to perform sedentary work with several restrictions. For example, he needed to "sit or stand for 2 to 3 minutes at a time at 30 to 45 minute intervals, during which period he may remain on task," could never climb ladders, ropes, or scaffolds, and had to avoid even moderate exposure to potential respiratory irritants. Applying that RFC, the ALJ concluded at Step Four that Barnes was unable to perform his past relevant work as a machinist and an off-bearer.

At Step Five, the ALJ stated that Grid rules 201.21 and 201.28 would direct a finding of "not disabled" based on Barnes's age, education, and work experience. However, he acknowledged that the Grids could be used only as framework because "additional limitations" made Barnes unable to perform the full range of sedentary work. The ALJ therefore called upon a vocational expert ("VE"), who testified that someone with Barnes's age, education, work experience, and RFC could perform two representative jobs that existed in significant numbers in the national economy: "semi-conductor assembler" and "production clerk." Both are semi-skilled positions.

---

bears the burden of proof at Steps One through Four, but the burden shifts to the Commissioner at Step Five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Neither the ALJ nor the VE stated what skills, if any, Barnes had acquired from his past work and whether those skills were transferable to the semi-skilled jobs identified. The ALJ simply stated, "Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills."

Based on the VE's testimony, the ALJ concluded Barnes was able to perform other work and therefore was not disabled. The Appeals Council denied Barnes's request for review, making the ALJ's decision final. The district court affirmed, concluding: "Because the Grids direct a finding of 'not disabled' regardless of whether Plaintiff has transferable skills, the ALJ was not required to decide whether Plaintiff's job skills were transferable." *Barnes v. Colvin*, 2016 WL 8674616, at *5 (D. Or. Aug. 12, 2016). Barnes timely appealed.

## STANDARD OF REVIEW

We review a district court's affirmance of the Commissioner's disability determination de novo, asking whether the decision was "supported by substantial evidence and a correct application of the law." *Lamear v. Berryhill*, 865 F.3d 1201, 1204 (9th Cir. 2017) (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).

## DISCUSSION

SSR 82-41 states:

> When the issue of skills and their transferability must be decided, the . . . ALJ

is required to make certain findings of fact and include them in the written decision. Findings should be supported with appropriate documentation.

When a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the . . . ALJ's decision. . . . It is important that these findings be made at all levels of adjudication to clearly establish the basis for the determination or decision for the claimant and for a reviewing body including a Federal district court.

SSR 82-41, 1982 WL 31389, at *7. "SSRs do not carry the 'force of law,' but they are binding on ALJs nonetheless." *Bray*, 554 F.3d at 1224 (quoting *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 & n.6 (9th Cir. 1989)).

Here, transferability of skills was a dispositive issue. Semi-skilled work requires "some skills." *See* 20 C.F.R. §§ 404.1568(b), 416.968(b). The issue of skills and their transferability therefore needed to be decided before the ALJ could find Barnes not disabled based on his ability to perform semi-skilled work.[4]

---

[4] The ALJ's finding that Barnes could perform two semi-skilled jobs does not support the inference that he could also perform unskilled jobs. *See* SSR 83-12, 1983 WL 31253, at *4 ("Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will.").

Although Barnes's past relevant work included a skilled job, the ALJ made no finding regarding what skills, if any, Barnes had acquired from that work and whether his skills were transferable to semi-skilled work as a "semi-conductor assembler" or "production clerk." The ALJ therefore erred by failing to make the written findings required by SSR 82-41.

The Commissioner argues transferability of skills was not material because the Grids "directed a finding of 'not disabled' whether or not Barnes had transferable skills."[5] In addition to the two Grid rules cited by the ALJ, she relies on Grid rules 201.22 and 201.29. Together, these four rules provide that a "younger individual age 45–49" or a "younger individual age 18–44" with the ability to perform the full range of sedentary work, a high school education, and skilled or semi-skilled past relevant work is not disabled whether he has transferable skills or no transferable skills. *See* 20 C.F.R. Part 404, Subpart P, App'x 2, rules 201.21–.22 ("younger individual age 45–49") and 201.28–.29 ("younger individual age 18–44"). The argument is without merit. To explain why, we consider how the Grids apply in the case of an

---

[5] An agency's interpretation of a statute it administers may be entitled deference even when it appears in a legal brief. *See Auer v. Robbins*, 519 U.S. 452, 462–63 (1997). However, the Commissioner's present position departs from the agency's statement in *Bray* that "[t]ransferability of skills is an issue whenever a vocational expert identifies any semiskilled or skilled jobs which a claimant can perform." Brief for Comm'r at 24, *Bray v. Comm'r of Soc. Sec. Admin*, 554 F.3d 1219 (9th Cir. 2009), 2007 WL 1577347. The unexplained shift provides reason to believe that the Commissioner's present interpretation is a "post hoc rationalization" rather than a "fair and considered judgment." *Auer*, 519 U.S. at 462. Deference is therefore unwarranted.

individual who, like Barnes, is unable to perform the full range of sedentary work.

The Grids were designed to relieve the Commissioner of the need to rely on a vocational expert in every case to establish the number of jobs available to a person with the claimant's physical ability, age, education, and work experience. *See Heckler v. Campbell*, 461 U.S. 458, 461 (1983) (describing the history of the Grids). Reasoning that individuals with similar characteristics could perform similar work, the Administration took notice of specific jobs that exist in significant numbers in the national economy and could be performed by claimants who fit a standard pattern. *Id.* at 465–68.

The Grids are organized into three tables corresponding to sedentary, light, and medium work. Each table has five columns. The first column contains a rule number, and the second through the fourth delineate the claimant's age, education, and work experience (for example, unskilled, none, skilled, semi-skilled, and "skills transferable" or "skills not transferable"). The fifth column renders a conclusion of either "disabled" or "not disabled." In Table No. 1, for sedentary work, a rule's conclusion of "not disabled" means that a claimant with those characteristics can perform the approximately 200 sedentary, unskilled jobs that the Administration has determined exist in significant numbers in the national economy. *See* SSR 96-9P, 1996 WL 374185, at *3; 20 C.F.R. Pt. 404, Subpt. P, App'x 2 § 201.00(a).

Of course, not all claimants fit neatly into the categories established by the Grids. In particular, each of the three Grid tables encompasses specific strength requirements, or "exertional limitations." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006). However, significant "non-

exertional limitations" such as "pain, postural limitations, or environmental limitations" that do not result in strength limitations may "limit the claimant's functional capacity in ways not contemplated by the guidelines." *Tackett*, 180 F.3d at 1102. Reliance on the Grids alone will then be inappropriate. Instead, the ALJ must determine, in consultation with a VE, which jobs a claimant can still perform "considering his or her age, education, and work experience, including any transferable skills or education providing for direct entry into skilled work." 20 C.F.R. Pt. 404, Subpt. P, App'x 2 § 201.00(h)(3).

The unskilled jobs contemplated by the Grids provide a "framework," or starting point, for that inquiry. *See* SSR 96-9P, 1996 WL 374185, at *2–5. In that sense, the Grids may assist the ALJ by establishing a universe of unskilled positions for consideration. If the claimant does have transferable skills from past work or relevant education, skilled and semi-skilled jobs also may be considered. But the Grids can never direct a conclusion of not disabled for a claimant with significant additional limitations not contemplated by the Grids. *Lounsburry*, 468 F.3d at 1116 (citing *Tackett*, 180 F.3d at 1102).

Here, as the ALJ acknowledged, Barnes had additional limitations not contemplated by the Grids. For example, his need to alternate sitting and standing at frequent intervals is a "significant non-exertional limitation not contemplated by the grids." *Tackett*, 180 F.3d at 1103–04. Given these additional limitations, the ALJ could not rely on the Grids to direct a finding of not disabled. And because the Grids did not direct a conclusion regarding disability, they did not permit the ALJ to conclude that transferability of skills was immaterial under SSR 82-41.

Nothing we said in *Bray* supports a contrary view. *Bray* shares two important features with this case. First, the Grids were appropriately used as a framework in both cases. *See* 554 F.3d at 1223 n.4. Second, the ALJ found, both here and in *Bray*, *see id.* at 1222, that the claimant was not disabled because he or she could perform semi-skilled work that existed in significant numbers in the national economy.

However, *Bray* had a third feature that this case lacks. A Grid rule stated that a person with Bray's age, education, and work experience was disabled without transferable skills. 554 F.3d at 1229. Bray was a few weeks shy of 55 at the time of her ALJ hearing, had a high school education, *id.* at 1221, and had past relevant work that was skilled or semi-skilled, *id.* at 1230 (Wu, J., concurring). Her RFC limited her to light work with additional restrictions. *Id.* at 1222 (majority opinion). Grid rule 202.06 states that a person of "advanced age" who has a high school education and skilled or semi-skilled work experience but no transferable skills is disabled.[6] On the other hand, rule 202.07 states that a person of the same age, education, and work experience who *has* transferable skills is *not* disabled. If the ALJ had found no transferable skills, rule 202.06 would have directed a finding of disability. For that reason, we stated that transferability of skills was "dispositive" under SSR 82-41, and the ALJ therefore erred by failing to make the requisite findings. 554 F.3d at 1229.

---

[6] "Advanced age" means an individual who is 55 or older. *See* 20 C.F.R. §§ 404.1563(e), 416.963(e). We gave Bray the benefit of that category because she turned 55 less than a month after her ALJ hearing, *see* 554 F.3d at 1224 (applying rule applicable to claimants of advanced age), and, in any event, she was 58 at the time of remand, *id.* at 1229.

Here, by contrast, no Grid rule directed that a person with Barnes's age, education, and work experience was disabled absent transferable skills. Barnes was 47 at the time of his ALJ hearing, had a high school education, and had past relevant work that was skilled and unskilled. His RFC limited him to less than the full range of sedentary work. Grid rule 201.21 states that a "younger individual age 45–49" with a high school education, skilled or semi-skilled work experience, and no transferable skills is not disabled. Rule 201.22 states that a person of the same age who has the same education and work experience but also has transferable skills is likewise not disabled. Under either rule, the result is no different. Thus, for Barnes, unlike Bray, a lack of transferable skills could not trigger a Grid rule that directed a conclusion of disabled.

However, *Bray* did not purport to identify the only situation in which transferability of skills will be dispositive. In light of the applicable Grid rules there, we did not need to decide whether a finding that the claimant could perform semi-skilled work was itself sufficient to require written findings under SSR 82-41.

Moreover, the Commissioner ignores an important consequence of using the Grids as a framework. "[A] finding of *disability* [under the Grids] . . . must be accepted by the [Commissioner] . . . ." *Lounsburry*, 468 F.3d at 1116 (quoting *Cooper v. Sullivan*, 880 F.2d 1152, 1157 (9th Cir. 1989)). That is, if a person who lacks the claimant's additional, non-exertional limitations is disabled, then the claimant is certainly disabled and "there is no need to examine the effect of the non-exertional limitations." *Id.* But the opposite is not true: the Grids as a framework "may not be used to direct a conclusion of *nondisability*." *Id.* Thus, in the case of a claimant with additional limitations not

contemplated by the Grids, a rule stating that the claimant is *disabled* will be dispositive, while one stating that the claimant is *not* disabled will not. In *Bray*, the former type of rule would have bound the ALJ if Bray lacked transferable skills. Here, the latter type applied, and the ALJ went on to find Barnes not disabled based on his ability to perform semi-skilled work. Because semi-skilled work requires skills, that made transferability of skills dispositive.[7]

Finally, the Commissioner argues that the VE's testimony was sufficient to show Barnes had the skills to perform the semi-skilled jobs identified. However, the VE gave no testimony whatsoever regarding Barnes's skills or their transferability. Assuming the VE took transferable skills into account is precisely what SSR 82-41 prohibits, for the explicit reason that it makes the ALJ's Step Five determination unreviewable. SSR 82-41, 1982 WL 31389, at *7 (emphasizing the importance of written findings "to clearly establish the basis for the determination or decision for the claimant and for a reviewing body including a Federal district court"). In any event, the argument is foreclosed by *Bray*'s holding that an ALJ does not satisfy his duty under SSR 82-41 to make written findings regarding transferability

---

[7] The Commissioner's reliance on *Bell-Shier v. Astrue*, 312 F. App'x 45, 50 (9th Cir. 2009)—a nonbinding, unpublished decision, *see* 9th Cir. Rule 36-3(a)—is equally misplaced. There, we held that written findings on transferability of skills were unnecessary under SSR 82-41 because the ALJ found the claimant "not disabled" under two Grid rules that did not require transferable skills. Critically, our analysis did not state or imply that additional limitations of the claimant made full reliance on the Grids inappropriate. Where a Grid rule fully describes a claimant's physical ability, the ALJ is entitled to rely on the Grids alone. *Heckler v. Campbell*, 461 U.S. 458, 465-68 (1983). Here, he was not.

of skills by relying on the testimony of the VE. *See* 554 F.3d at 1225–26.

## CONCLUSION

The ALJ's failure to make the written findings required by SSR 82-41 prevents the Court from determining whether substantial evidence supports his Step Five determination. We **REVERSE** the district court's judgment and **REMAND** with instructions to remand to the Commissioner for further proceedings.[8]

---

[8] On remand, Barnes is entitled to application of the Grid rule appropriate to his age at the time of the remand hearing. *See Bray*, 554 F.3d at 1229 n.9 (instructing the ALJ to consider the claimant's age at the time of the remand hearing). He is now over 50 years old and classified under the Grids as a person "closely approaching advanced age." 20 C.F.R. §§ 404.1563(d), 416.963(d). Therefore, under the relevant rules, he will be disabled based on exertional limitations alone unless he has transferable skills. *See* 20 C.F.R. Part 404, Subpart P, App'x 2, Rules 201.14-.15. The ALJ will also determine, in accordance with this opinion, whether Barnes was disabled before he reached the age of 50 because it will affect the amount of benefits, if any, that he is entitled to receive. *See Bray*, 554 F.3d at 1229 n.9 (directing the ALJ to consider whether Bray became disabled before turning 55).